```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
JAMES K. BLAIR, *pro se*,               :
                                        :
                    Plaintiff,          :
                                        :         **MEMORANDUM AND ORDER**
            -against-                   :         11-cv-2753 (DLI)
                                        :
MICHAEL J. ASTRUE,                      :
COMMISSIONER OF SOCIAL SECURITY,        :
                                        :
                    Defendant.          :
---------------------------------------------------------- x
```
**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se* plaintiff James K. Blair ("Plaintiff") filed applications for supplemental security income and disability insurance benefits under the Social Security Act (the "Act") on July 2, 2008, alleging a disability that began on January 1, 2007. Plaintiff's application was denied, and on reconsideration, Plaintiff, represented by a non-attorney representative, appeared and testified at a hearing held before Administrative Law Judge Margaret L. Pecoraro ("ALJ") on February 2, 2010. By a decision dated April 14, 2010, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. On April 27, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

Plaintiff filed the instant appeal *pro se* seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). The Commissioner moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking affirmation of the denial of benefits. Plaintiff did not move for judgment on the pleadings or respond to the Commissioner's motion, and the motion was deemed unopposed on February 15, 2012. For the reasons set forth more fully below, the Commissioner's motion is granted.

## BACKGROUND

**A.    Non-medical and Testimonial Evidence**

On February 2, 2010, Plaintiff, represented by a non-attorney representative, testified at a hearing concerning his disability claim. (R. 25-56.)[1] Born on October 29, 1962, Plaintiff went to school through tenth grade, but never graduated high school or obtained a GED. (*Id.* 28, 125, 134.) Plaintiff worked from 1998 until 2005 providing counseling and recreation services to patients with mental disabilities, but was fired for sleeping on the job. (*Id.* 28-31; *see also id.* 130.) At the time of the hearing, Plaintiff was living with his brother. (*Id.* 28.) He has been living with his brother since his mother died approximately two years before the hearing. (*Id.*)

In his application, Plaintiff stated that he has been disabled since January 1, 2007 because of asthma, bronchitis, sleep apnea and back problems. (*Id.* 129.) Plaintiff testified that, as result of his ailments, he could not walk more than five or six blocks, could not lift heavy things, had trouble staying awake and had difficulty breathing. (*Id.* 29-34.) More specifically, Plaintiff explained that his legs become swollen when he walks and he had been hospitalized because of his leg problems. (*Id.* 32-33.) Plaintiff generally uses a cane to help him walk. (*Id.* 146.) He has back pain as a result of gunshot wounds he sustained in February 2002 and has problems bending over. (*Id.* 31, 137; *see also id.* 164.) He has a "little bit" of trouble sitting because of the back pain. (*Id.* 32.) He takes Tylenol and Motrin daily for the pain. (*Id.* 145.) However, he still can lift 40 to 50 pounds. (*Id.* 32.) Plaintiff weighed approximately 350 pounds at the time of the hearing. (*Id.* 39.)

Plaintiff was hospitalized for asthma in 2009. (*Id.* 32.) He also testified that, in 2008, he was hospitalized for two months for breathing and heart problems. (*Id.* 34.) Plaintiff stated that

---

[1] "R." citations are to the correspondingly numbered pages in the certified administrative record, which was filed as entry 21 on the docket.

he quit smoking five months before the hearing because a doctor told him that he would not live long if he continued smoking. (*Id.* 33.) Plaintiff has been using a breathing machine at night for his sleep apnea that gives him a little energy. (*Id.* 33, 35.) However, he still falls asleep when he is not occupied, which he believes would be a problem if he tried to work. (*Id.* 38.) Plaintiff also uses a "pump" for his asthma, which he uses every four hours. (*Id.* 35.) Still, he reported that he experiences shortness of breath that wakes him up at night. (*Id.* 137.) Plaintiff also sought psychiatric treatment following his mother's death two years before the hearing, but stated he was no longer seeing a therapist. (*Id.* 31.)

Plaintiff testified that, during a typical day, he watches a lot of television and listens to the radio. (*Id.* 35.) He also looks through books and magazines, though he cannot read well. (*Id.* 38.) He plays cards and goes to church and the movies approximately once per week, though he does not go out as much as he used to because he gets tired easily. (*Id.* 141.) Plaintiff reported that he does not need assistance taking care of his personal needs and grooming. (*Id.* 138.) He also prepares food daily and does cleaning, laundry and ironing. (*Id.* 138-39.) Plaintiff stated that he has trouble remembering things sometimes because he "blanks out." (*Id.* 143.)

**B.  Summary of the Medical Evidence**

In March 2008, Plaintiff received treatment for chest, neck and knee pain following injuries he sustained in a fight. (*See id.* 305-07.) An x-ray of his left knee revealed meniscus degeneration and x-rays of his neck showed degenerative disc disease and degenerative joint disease of the spine. (*Id.*)

The record reflects that Plaintiff also was treated for various respiratory and cardiac ailments in 2008. At a physical examination in March 2008, an electrocardiogram ("ECG") was borderline. (*Id.* 413-14.) In April 2008, Plaintiff was evaluated for a ventral hernia, and was

given an abdominal binder and told to lose weight. (*Id.* 162.) Plaintiff also complained of restless nights, snoring and daytime sleepiness. (*Id.* 213-14.)

In June 2008, Plaintiff was admitted to Queens Hospital Center complaining of shortness of breath. (*Id.* 171-90, 323-49.) Chest x-rays showed lung fields within normal limits and bullet fragments in Plaintiff's back. (*Id.* 187.) Plaintiff underwent a cardiology evaluation due to an abnormal ECG. (*Id.* 171, 176, 179-80.) An echocardiogram was normal, although limited due to technical difficulties associated with Plaintiff's obesity. (*Id.* 184, 325.) During a July 1, 2008 stress test, Plaintiff achieved a heart rate that was 64% of his age predicted maximum, but the procedure was terminated when he developed chest pain and a drop in systolic blood pressure. (*Id.* 171, 183, 326.) Plaintiff was then transferred to Elmhurst Hospital and underwent cardiac catheterization. (*Id.* 171.) The procedure revealed normal coronaries, normal left ventricle systolic function, no mitral regurgitation and no aortic stenosis. (*Id.* 171-72.) Plaintiff was ultimately discharged from the hospital on July 18, 2008. He was treated for asthma exacerbation and there was a complete resolution of his symptoms. (*Id.* 171.) At discharge, he was diagnosed with morbid obesity, extrinsic asthma and benign essential hypertension. (*Id.* 171, 175.)

In September 2008, Plaintiff underwent several medical examinations. (*Id.* 215-18, 307, 360-61.) Plaintiff's hypertension was well-controlled by medication. (*Id.* 216.) His asthma was poorly controlled, however, as Plaintiff reported frequent nighttime awakenings. (*Id.*) Plaintiff recounted to a cardiologist, Dr. Sanjav Singal, that he had been experiencing non-exertional chest pain almost daily for the past few years, with shortness of breath. (*Id.* 360.) Dr. Singal stated that he had been told that Plaintiff had coronary artery disease, but that he did not have any supporting documentation for that diagnosis. (*Id.*) He found that Plaintiff's chest pain

appeared atypical for cardiac etiology and an alternative explanation included a gastro-intestinal cause. (*Id.* 361.) Dr. Singal also explained that Plaintiff's shortness of breath was probably from factors such as physical deconditioning, obesity and asthma. (*Id.*) Plaintiff was diagnosed with obesity, chronic cigarette smoking and a history of hypertension. (*Id.*)

On October 8, 2008, Plaintiff saw Dr. Luke Han for a consultative physical examination. (*Id.* 220-24.) Plaintiff told Dr. Han that he did not have asthma attacks often and denied having a history of high blood pressure, diabetes or heart disease. (*Id.* 220.) Plaintiff complained of back pain that was localized, sharp and constant, which started at age 13 and worsened when he was shot in the back in 2003. (*Id.*) Dr. Han found that Plaintiff's gait and stance were normal, and that he could walk on his heels and toes with a little difficulty. (*Id.* 221.) Plaintiff did not need any help changing for the examination or getting on or off the examining table and chair. (*Id.*) Plaintiff's lungs were clear. (*Id.* 222.) Dr. Han diagnosed morbid obesity, bronchial asthma, lower back pain and gunshot wounds in the lower back and right leg, and history of car accident in 2006. (*Id.* 223.)

On October 20, 2008, Plaintiff was evaluated at the Advanced Center for Psychotherapy. (*Id.* 225-33.) Plaintiff said he had "problems" and that he was "losing my mind." (*Id.* 225.) He reported an unsuccessful suicide attempt using pills three of four months before. (*Id.* 226.) His general behavior was found to be appropriate and his mood was "ok." (*Id.* 228, 230.) However, Plaintiff had poor recent memory and impaired concrete thought. (*Id.* 230.) Plaintiff was diagnosed with adjustment disorder and marijuana abuse. (*Id.* 232.) Plaintiff received a Global

Assessment of Functioning ("GAF") score of 60.[2] (*Id*.) Psychiatric admission and medication were not recommended because Plaintiff was smoking marijuana regularly. (*Id.* 232-33.)

On November 7, 2008, a state agency psychiatrist, Dr. J. Kessel, reviewed Plaintiff's file. (*Id.* 234-47, 254-57.) Dr. Kessel found that Plaintiff did not fulfill the criteria for a major depressive disorder or bipolar disorder. (*Id.* 237.) Dr. Kessel concluded that Plaintiff had mild restrictions on daily activities, mild difficulties in social functioning, mild difficulties in maintaining concentration and no repeated episodes of deterioration. (*Id.* 244.)

From March 24 to March 27, 2009, Plaintiff was treated at St. John's Episcopal Hospital for chest pain and chronic obstructive pulmonary disease ("COPD") exacerbation. (*Id.* 370-75.) Plaintiff was discharged with no activity restrictions and prescribed a diet and medications. (*Id.* 372-73, 375.) Plaintiff was again admitted to St. John's from September 12 to September 18, 2009 for chest pain. (*Id.* 362-66, 379.) Cardiac enzyme tests were negative. (*Id.* 364.) Plaintiff was diagnosed at discharge with atypical chest and chest wall pain, asthma and inguinal hernia. (*Id*.) Plaintiff was advised to stop smoking and his activity restrictions were "as tolerated." (*Id.* 366.)

On December 15, 2009, Plaintiff sought treatment from Epignosis Specialty Practice, P.C., for evaluation of snoring, severe daytime sleepiness and frequent nighttime awakening. (*Id.* 377-78.) Following an examination, Plaintiff was diagnosed with obstructive sleep apnea, hypertension, asthma and narcolepsy. (*Id.* 380.) Plaintiff was referred to a sleep study and advised to lose weight, exercise and avoid driving drowsy. (*Id*.) The following month, a sleep study revealed severe obstructive sleep apnea. (*Id.* 381-83.) However, use of continuous

---

[2] According to the *Diagnostic and Statistical Manual of Mental Disorders,* 4th ed., a GAF of 60 is indicative only of moderate symptoms or difficulty in social occupational or school functioning.

positive airway pressure ("CPAP") improved his sleep and respiratory disturbance index to within normal limits. (*Id.* 383.) Plaintiff was told to avoid alcohol at bedtime, lose weight and use CPAP daily. (*Id.*)

On January 6, 2010, Dr. Joyce Graber, an internist, performed a consultative examination of Plaintiff. (*Id.* 258-67.) Dr. Graber reported that Plaintiff's gait and stance were normal, he could walk on his heels and toes and could rise from a chair without difficulty. (*Id.* 259.) The examination was unremarkable, including chest lungs and heart, and Plaintiff had full ranges of motion of the cervical and lumbar spines. (*Id.* 260.) Dr. Graber concluded that Plaintiff was limited from activities requiring moderate or greater exertion due to heart disease. (*Id.* 261.) Dr. Graber found that Plaintiff could frequently lift and occasionally carry up to ten pounds and occasionally lift and carry up to 20 pounds. (*Id.* 262.) In an eight-hour workday, Plaintiff could sit for four hours at a time and five hours total, stand for four hours at a time and three hours total, and walk for one hour at a time and two hours total. (*Id.* 263) Plaintiff could not tolerate exposure to humidity, dust, odor, fumes and other pulmonary irritants. (*Id.* 266.) Plaintiff also could not walk a block at a reasonable pace on rough or uneven surfaces, but was not limited in other regular daily activities. (*Id.* 267.)

Dr. Kenneth Cochrane performed a consultative psychiatric evaluation on January 6, 2010. (*Id.* 273-79.) Plaintiff's demeanor was cooperative and his social skills were adequate. (*Id.* 274.) His posture was slouched, his motor behavior was lethargic and he appeared unkempt. (*Id.*) Plaintiff's intellectual functioning was average, his insight was limited and his judgment was poor. (*Id.* 275.) Dr. Cochrane diagnosed Plaintiff with major depressive disorder, moderate without psychotic features, cocaine dependence in full remission and borderline intellectual functioning. (*Id.*) Dr. Cochrane recommended that Plaintiff re-enter psychiatric treatment. (*Id.*

7

276.) He also found that Plaintiff's vocational difficulties were caused by his psychiatric symptoms, but they did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (*Id.* 275.) Dr. Cochrane completed a medical source statement of ability to do work-related activities. (*Id.* 277-79.) In the statement, he opined that Plaintiff's impairment did not affect his ability to understand and carry out instructions, interact appropriately with others or manage benefits in his own best interests. (*Id.*)

Plaintiff was admitted to St. John's again from January 18 to January 23, 2010 for treatment of right leg cellulitis. (*Id.* 367-68, 376.) His activity restrictions at discharge were "as tolerated." (*Id.* 376.)

**C.    Testimony from Medical Expert**

At the administrative hearing, the ALJ heard testimony from Dr. Harold Bernanke, who had reviewed the record. (*Id.* 40-55, 91.) Dr. Bernanke explained that the tests during Plaintiff's 2008 and 2009 hospitalization revealed that Plaintiff did not have a myocardial infarct. (*Id.* 41.) He also testified that Plaintiff's stress tests revealed a defect, but did not show ischemia or coronary disease. (*Id.* 42-43, 50-51.) Dr. Bernanke further noted that Plaintiff responded to asthma treatment and that Plaintiff's sleep apnea, while severe, improved to near normal with use of the CPAP. (*Id.* 45, 48-50.) Dr. Bernanke concluded that Plaintiff's conditions, individually or in combination, did not meet or equal a listing. (*Id.* 46-47.) He found that Plaintiff had no limitations walking, standing or sitting, though Plaintiff had environmental limitations to dust, noise and cold exposure. (*Id.* 47.)

**D.    Evidence Submitted to the Appeals Council**

Plaintiff submitted new evidence to the Appeals Council that was not before the ALJ. (*See id.* 415-31, 436-38.) The materials reflect physical examinations of Plaintiff by doctors

from Alfamed Physicians between October 28, 2009 and May 26, 2010. (*See id.* 414-38.) In these visits, Plaintiff complained of difficulty breathing and abdominal pain. (*Id.*) Plaintiff continued to be diagnosed with obesity, obstructive sleep apnea, hypertension, COPD/asthma, ventral hernia and leg cellulitis. (*Id.*)

## DISCUSSION

### I. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide

a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F. 3d 34, 39 (2d Cir. 1996)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (internal quotation marks omitted).

In addition, because Plaintiff is proceeding *pro se*, the court holds his pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The court construes them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis omitted).

## II. Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under

the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002).

### III. The ALJ's Decision

On April 14, 2010, the ALJ issued her decision denying Plaintiff's claim. (R. 10-22.) At the first step, the ALJ found that Plaintiff had not worked since his alleged onset date, January 1, 2007. (*Id.* 12.) At the second step, the ALJ concluded that Plaintiff suffered from the following severe impairments: obesity, COPD/asthma, obstructive sleep apnea, heart disease, depressive

disorder, substance abuse (marijuana) and an adjustment disorder. (*Id*.) At the third step, the ALJ concluded that these impairments, in combination or individually, did not meet, or equal, a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id*.) As part of the third step, the ALJ specifically considered impairments under sections 1.00 *Musculoskeletal System*, 12.04 *Affective Disorder*, 3.02 *Chronic pulmonary insufficiency*, 3.03 *Asthma*, 4.02 *Chronic heart failure*, 12.04 *Affective Disorders* and 12.09 *Substance Addiction Disorders*. (*Id.* 13-14.) In concluding that Plaintiff's impairments did not meet a listed a disorder, the ALJ gave great weight to testifying physician Dr. Bernanke and considered Plaintiff's statements that he was able to handle various daily living tasks, such as cooking and cleaning. (*Id.* 14.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform a wide range of light work with certain limitations, but that he is unable to perform his past relevant work as a home health aide. (*Id.* 15-21.) At the fifth step, the ALJ concluded that based on Plaintiff's age, education, work experience and RFC, Plaintiff could work in sedentary and light occupations, which include 1,600 separate occupations. (*Id.* 21-22.)

## IV.  Application

Plaintiff filed the instant appeal *pro se*, claiming that he is entitled to benefits because of asthma, sleep apnea, leg edema, back pain, leg pain and high blood pressure. (Compl. ¶ 4.) Plaintiff filed a form complaint, asserting that the decision of the ALJ was not supported by substantial evidence on the record and/or was contrary to the law, but does not provide any specific reasons why the ALJ's decision should be reversed. (*Id.* ¶ 9.) The Commissioner moved for judgment on the pleadings, seeking affirmance of the ALJ's decision. (*See* Comm'r Mot. for J. on the Pleadings, Dkt. Entry 18.) The court directed Plaintiff to respond, but Plaintiff did not cross-move for judgment on the pleadings or otherwise respond to the Commissioner's

motion. (*See* Jan. 18, 2012 Order.) The Commissioner's motion was deemed unopposed on February 15, 2012.

After a review of the administrative record, the court holds that the ALJ's comprehensive decision was supported by substantial evidence and was not contrary to law. In concluding that the Plaintiff was not disabled, the ALJ determined that his impairments did not meet any of the criteria in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that he had the RFC to perform a range of light work with certain limitations. (R. 21.) The ALJ found that he could lift/carry and push/pull twenty pounds occasionally, ten pounds frequently and can stand/walk for at least six hours and sit for six hours in an eight hour workday. (*Id.* 15.) The ALJ further found that Plaintiff is capable of understanding, remembering and carrying out simple instructions, maintaining concentration for extended periods of time, and relating appropriately to co-workers and supervisors. (*Id.*) These conclusions find support in Plaintiff's treatment records, the reports of consultative physicians and the medical expert's opinion.

The court notes initially that, while no treating physician submitted a medical source statement, in this instance, where the record contains Plaintiff's comprehensive medical records and consulting medical experts provided opinions consistent with the ALJ's findings, the ALJ was not required to seek additional materials from Plaintiff's treating physicians. *See* 20 C.F.R. § 404.1513(b)(6) ("Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete."); *Rosa*, 168 F. 3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (quoting *Perez v. Chater*, 77 F. 3d 41, 48 (2d Cir. 1996))).

Here, Plaintiff's records from treating sources are consistent with the ALJ's decision. With respect to Plaintiff's asthma, Plaintiff was treated in a hospital in 2008, but his records show the treatments resulted in a resolution of his symptoms. (*See id.* 171.) Following his hospital visit in 2008, Plaintiff reported to Dr. Han that he did not have asthma attacks often. (*Id.* 220.) Plaintiff has also complained of sleep apnea, leading to restless nights and daytime drowsiness. (*Id.* 213.) A medical examination and a sleep study confirmed that Plaintiff suffered from severe obstructive sleep apnea. (*Id.* 380-83.) However, treatment using a CPAP improved his sleep and respiratory disturbance index to within normal limits. (*Id.* 383.)

Plaintiff asserts for the first time in the Complaint that he also is disabled from hypertension. (Compl. ¶ 4.) The ALJ found that he was impaired from heart disease as well, though the ALJ determined that he was not disabled from his heart disease and Plaintiff has never contended otherwise. Plaintiff's medical records support the ALJ's conclusion that he is not disabled from these ailments. In 2008, when Plaintiff was admitted to the hospital complaining of shortness of breath, Plaintiff's echocardiogram was normal and a cardiac catheterization showed normal coronaries and left ventricle systolic function. (R. 171-72, 176, 184, 325.) Upon discharge, his hypertension was diagnosed as benign. (*Id.* 171.) Subsequent examinations found that his hypertension was controlled by medication. (*Id.* 307.) Another treating physician, Dr. Singal, found that Plaintiff's chest pain appeared atypical for cardiac etiology and might be caused by gastro-intestinal issues. (*Id.* 361.) Dr. Singal also reported that Plaintiff's shortness of breath was probably from factors such as physical deconditioning, obesity and asthma. (*Id.*) Similarly, in 2009 when Plaintiff was hospitalized with chest pain, cardiac enzyme tests were negative and Plaintiff's activity restrictions were limited "as tolerated." (*Id.* 364-66.)

Plaintiff also asserts that he is disabled from back pain and leg swelling, though he did not list leg pain or swelling previously as disabling. Plaintiff was shot in the back in 2002, but was able to work afterwards. (*Id.* 164, 220, 223.) While an x-ray in 2008 showed degenerative joint disease of the spine, none of his other medical records report back-related complaints from Plaintiff. (*Id.* 305-07.) There also is scant evidence of leg pain or swelling. The records report only "mild" swelling and deep vein thrombosis was ruled out. (*Id.* 176, 364, 376.) He was hospitalized in January 2010 for leg cellulitis, but his activity restrictions at discharge were "as tolerated." (*Id.* 376.)

The consulting physicians' reports following their examinations, which the ALJ also relied upon, are consistent with Plaintiff's medical records. In 2008, Dr. Han examined Plaintiff and observed that Plaintiff's gait and stance were normal, and that he could walk on his heels and toes with a little difficulty. (*Id.* 221.) Dr. Han diagnosed morbid obesity, bronchial asthma, lower back pain and gunshot wounds in the lower back and right leg. (*Id.* 223.) In 2010, Dr. Graber also reported that Plaintiff could walk on his heels and toes and had full range of motion in his spine. (*Id.* 259-60.) The examination of Plaintiff's lung and heart was unremarkable. (*Id.* 260.) Dr. Graber stated that Plaintiff should not undertake activities requiring moderate or more exertion, but that Plaintiff could still lift and carry up to 20 pounds. (*Id.* 261-62.)

Plaintiff also was given a consultative psychological examination by Dr. Cochrane, even though Plaintiff had not claimed that he was disabled because of any mental impairment. Dr. Cochrane diagnosed Plaintiff with major depressive disorder, moderate without psychotic features, cocaine dependence in full remission and borderline intellectual functioning. (*Id.* 275.) Nevertheless, Dr. Cochrane found that Plaintiff's impairments did not affect his ability to understand and carry out instructions, interact appropriately with others or manage benefits in his

own best interests. (*Id*. 277-29.) This conclusion is supported by a treating physician's finding in 2008 that Plaintiff had a GAF score of 60, which indicates moderate symptoms or difficulty in social functioning. (*Id*. 232.)

The ALJ also accorded "great weight" to the opinion of the testifying medical expert, Dr. Bernanke, that Plaintiff was not disabled. (*Id.* 19-20.) Dr. Bernanke reviewed the evidence and found that Plaintiff was capable of lifting over twenty-five pounds and had no walking or sitting restrictions, but needed to avoid exposure to respiratory irritants. (*Id.* 46-47.) These conclusions were well-supported by the medical evidence, discussed above, that Plaintiff's sleep apnea and asthma were well-treated and cardiology exams did not show ischemia or coronary disease. (*Id.* 42-43, 45, 48-51.) Therefore, the ALJ did not err in relying upon Dr. Bernanke's testimony. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

The ALJ considered Plaintiff's testimony and found that his medically determinable impairments reasonably could be expected to cause Plaintiff's alleged symptoms. (R. 20.) However, the ALJ found Plaintiff's testimony about his symptoms not credible to the extent that it was inconsistent with the ALJ's RFC determination. (*Id*.) The ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (alteration in original)). Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than

medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ provided adequate reasoning to support a finding that Plaintiff was not credible. Plaintiff previously had reported that he is able to take care of his personal needs, cooks, cleans, irons and does laundry. (R. 138-39.) The ALJ further noted that Plaintiff's symptoms were generally controlled by treatment and medication, and Plaintiff acknowledged that CPAP provides him relief. (*Id.* 20, 33.) Moreover, Plaintiff's testimony, even if accepted as credible, does not completely support a disability finding. For example, Plaintiff stated that he can lift 40 to 50 pounds and can walk five to six blocks. (*Id.* 32.) He also testified that he only had "a little bit" of pain from his back when sitting. (*Id.*) Thus, in combination with the extensive and consistent medical evidence that Plaintiff's impairments were not disabling, the ALJ properly exercised her discretion in finding that Plaintiff's testimony did not support a finding that he is disabled.

After finding that Plaintiff could not perform his past relevant work as a home health aide because it requires medium physical exertion, the ALJ concluded that there were jobs in the economy that Plaintiff could perform. (*Id.* 21.) Specifically, the ALJ considered Plaintiff's age, education, ability to communicate in English and work experience, along with his RFC for light work. (*Id.*) The ALJ further concluded that Plaintiff's additional, non-exertional, limitations do not significantly erode Plaintiff's occupational base of sedentary light work. (*Id.* 22.) Plaintiff's vocational and functional factors correspond to Medical-Vocational Rule 202.18, which direct a finding that Plaintiff is not disabled. *See* C.F.R. Part 404, Subpart P, App. 2. Thus, the ALJ's conclusion that Plaintiff could perform work in the economy was consistent with governing law.

In sum, the medical evidence provides substantial support for the ALJ's findings and the ALJ correctly applied the law to those findings. Accordingly, the ALJ's decision that Plaintiff is not disabled is not in error.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is granted and this action is dismissed. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED

DATED:   Brooklyn, New York
         March 1, 2013

                              _____/s/_____
                                    DORA L. IRIZARRY
                                United States District Judge